UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDUARDO RODRIGUEZ RAMIREZ,

Petitioner,

v.

WARDEN OF NORTHWEST ICE PROCESSING CENTER, et al.,

Respondents.

CASE NO. 2:26-cv-03777-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Eduardo Rodriguez Ramirez's Petition for Writ of Habeas Corpus. Dkt. No. 1. Having reviewed the Petition and Respondents' return (Dkt. No. 5), and the relevant record,[1] the Court GRANTS the petition.

//

//

//

[1] Petitioner did not file a reply. *See infra* Section III.

## I. BACKGROUND

Petitioner, proceeding pro se, is a native and citizen of Mexico. Dkt. No. 6-1 (DHS I-862 form) at 2.[2] At an unknown time, Petitioner entered the United States. *Id.* Petitioner has lived in Ohama, Nebraska for three decades (Bond Hearing Audio at 2:18–2:22) and has been married for 34 years. Dkt. No. 1-1 (exhibits to petition) at 177 (wife letter of support). He has three daughters and a son. *Id.* at 185 (son letter of support). Petitioner has four prior voluntary removals to Mexico, all occurring in 1998. *Id.* at 20 (DHS Form I-213).

On April 19, 2023, Petitioner pleaded guilty to criminal impersonation—a class four felony—in Nebraska state court. *Id.* at 25 (plea agreement). The offense stemmed from Petitioner's use of another person's paperwork with their consent to obtain a business license. Bond Hearing Audio at 9:00–9:10. On June 15, 2023, Petitioner was sentenced to 90 days' imprisonment. Dkt. No. 1-1 at 26. He served an alternative sentence of electronic home monitoring. *Id.* at 28 (release to house arrest order).

On July 3, 2026, Petitioner was arrested by US Immigration and Customs Enforcement ("ICE") agents. Dkt. No. 1-1 at 20. He was charged as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *Id.* at 16 (notice to appear). Petitioner was eventually transported to Northwest ICE Processing Center ("NWIPC"), where he is currently detained. Dkt. No. 1 at 1. On October 7, 2026, Petitioner was ordered removed by Immigration Judge ("IJ"). Dkt. No. 6-5 (order of removal) at 2–5. As of the time Respondents filed their return, Petitioner's order of removal is not yet final. *See* Dkt. No. 6-5 at 5.

//

//

---

[2] In establishing facts, the Court utilizes an audio recording of Petitioner's bond hearing which was produced by Respondents ("Bond Hearing Audio"). *See* Dkt. No. 7 (Notice of CD in Paper or Physical Form with the Clerk).

On August 27, 2026, Petitioner appeared before IJ Tammy Fitting for a hearing to determine Petitioner's eligibility for bond. Dkt. No. 6-6 (bond hearing order) at 2. Finding that Petitioner was a flight risk, the IJ denied bond. *Id.* Subsequently, Petitioner filed this instant Petition.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.2d 628, 638 (9th Cir. 2004)—that is, they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 § U.S.C. 2241(c).

## III. PRELIMINARY MATTER

Petitioner did not file a timely reply by the deadline set in the scheduling order. *See* Dkt. No. 2. However, Petitioner did file a motion to file a late reply on November 13, 2026. Dkt. No. 11. The Court would have granted Petitioner's motion, however, it appears Petitioner filed his motion twice rather than filing the motion and a reply. *See* Dkt. Nos. 10, 11. Because the Court will grant the Petitioner's requested relief, the Court will deny Petitioner's motion as moot rather than further delay the resolution of the petition to wait for the reply.

## IV. DISCUSSION

Both parties agree that Petitioner is detained under § 1226(a). *See* Dkt. No. 1-1 at 3 (Petitioner bond hearing memorandum); Dkt. No. 5 at 1. Petitioner claims he was denied meaningful review of his continued immigration detention, and requests "review of the legality of continued custody and the adequacy of the available review process." Dkt. No. 1 at 3. Petitioner also "asks the Court to determine whether continued detention and the review actually available satisfies due process." *Id.* at 6. While Petitioner does not specify that he challenges the

bond hearing directly, it is the only "review" of his detention that Petitioner could claim was not "meaningful[.]" Dkt. No. 1-1 at 3. Given pro se habeas filings must be construed "liberally," the Court interprets this as challenging the bond hearing's adequacy. *Gutierrez Hernandez v. Scott*, No. C26-2723, 2026 WL 3093289, at *2 (W.D. Wash. Oct. 16, 2026).

Respondents do not present arguments on whether the IJ's denial of bond constitutes an abuse of discretion. *See* Dkt. No. 5. Instead, they contend that Petitioner has not timely appealed the IJ's bond determination to the BIA, and therefore has not sufficiently exhausted his administrative remedies. *Id.* at 4–8. The Court now considers whether administrative exhaustion should be waived.

**A. Administrative Exhaustion**

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts in the Ninth Circuit consider the *Puga* factors when determining whether exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). Even if the *Puga* factors establish that administrative exhaustion is required, a court may waive the exhaustion requirement if a petitioner establishes one of the

*Laing* factors applies—that is, if (1) "administrative remedies are inadequate or not efficacious," (2) "pursuit of administrative remedies would be a futile gesture," (3) "irreparable injury will result," or (4) "the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Respondents argue the prudential exhaustion requirement prevents this Court from reviewing "whether [Petitioner's] bond hearing complied with due process in the absence of any pending appeal and before the BIA has reviewed the IJ's custody determination." Dkt. No. 5 at 4. Additionally, they argue, Petitioner cannot show he is eligible for waiver under any of the *Laing* factors, as "the mere passage of time or the delay inherent in the administrative process is insufficient to establish the type of unique, individualized injury necessary to waive prudential exhaustion." *Id.* at 7. Petitioner, without much elaboration, argues that "detention" is relevant in "deciding whether an exception . . . is warranted." Dkt. No. 1 at 6.

Petitioner's position, however inexpertly phrased, is correct. Specifically, the third *Laing* factor (irreparable injury) weighs towards waving the prudential exhaustion. Should Petitioner be forced to wait out his BIA appeal before proceeding with his habeas petition, he likely faces many more months in detention. *See Vasquez Lopez v. Hernandez*, 830 F. Supp. 3d 1097, 1100 (W.D. Wash. 2026) (finding that statistics from 2026 show that the BIA appeal process is currently "substantially longer" than it was in 2024 when exhausting an administrative appeal required more than six months). Therefore, "[c]ourts in this Circuit have regularly waived exhaustion requirements for noncitizens who face irreparable injury from being detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Scott v. Wamsley*, No. C25-1819, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025) (citation modified); *see also Loya Medina v. Hernandez*,

No. C26-772, 2026 WL 1260848, at *6 (W.D. Wash. May 7, 2026) (waiving prudential exhaustion requirement due to irreparable injury in part because "Petitioner's continued detention while awaiting agency review of her claims disrupts her ability to provide financial support and maintain the stability of her household, including care for her husband and children"); *Soriano v. Hernandez,* 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) (waiving prudential exhaustion requirement due to irreparable injury because "Petitioner has dependents who rely on him financially and emotionally, and that relationship is severely negatively impacted by his continued detention.").

Petitioner has been detained since July 3, 2026. Dkt. No. 6-3 (DHS I-213 form) at 3. Besides the self-evident harm derived from any type of detention, Petitioner has been separated from his family, including his wife, his four children, and his grandson. Dkt. No. 1-1 at 5. His daughter writes that "there has not been [a] night where I have not missed him or cried for him." Dkt. No. 1-1 at 83 (daughter letter of support). His family has also lost their financial provider. *Id.* at 92 (wife letter of support). These constitute the type of irreparable injury that allows this Court under *Laing* to waive the prudential exhaustion requirement. *See Loya Medina*, 2026 WL 1260848, at *6.

Therefore, Petitioner has met his burden of demonstrating that irreparable injury would result if he were required to exhaust his administrative remedies, and the Court waives the prudential exhaustion requirement. The Court now proceeds to the merits of Petitioner's bond-hearing claim and considers whether the IJ's finding that Petitioner was a flight risk is an abuse of discretion.

**B. Sufficiency of the Bond Hearing**

When determining whether a noncitizen is a danger to the community or a flight risk, an IJ weighs nine factors, pursuant to BIA precedent. *Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006);

*see also Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024). These factors include:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez*, 124 F.4th at 784. "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). "[B]ond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

The IJ's written order provides no explanation or reasoning for her findings. The order simply checks off a pre-written option that the request for custody status change is denied, and checks the box labeled "Flight Risk." Dkt. No. 6-6 at 2. Furthermore, no bond memorandum was presented for this Court's review. Respondents did provide this Court with an audio recording of the bond redetermination hearing (*see* Dkt. No. 7), and Petitioner filed what appears to be the complete documentary record presented to the IJ in connection with his request for bond. *See* Dkt. No. 1-1 at 15–141, 144–162. The Court utilizes both in evaluating whether the IJ abused her discretion. *See Tavurov v. Noem*, No. C26-668, 2026 WL 1283513, at *6 (W.D. Wash. May 11, 2026) (an IJ's bond determination may be evaluated for legal error by examining "the

adjudicator's opinion itself" or by considering whether "the decisionmaker erred because the evidence itself could not—as a matter of law—have supported the adjudicator's conclusion" (quoting Hechavarria v. Whitaker, 358 F. Supp. 3d 227, 240 (W.D.N.Y. Jan. 16, 2019)).

In the hearing, Petitioner raised several arguments justifying bond. This includes that Petitioner lived at the same address for three decades, that his wife of three decades is a Lawful Permanent Resident, that he has four children (all of whom are U.S. citizens), and that he helps provide care for his autistic grandson. Bond Hearing Audio at 2:30–4:10. Notably, neither the IJ nor counsel for the Government questioned the veracity of these claims. Petitioner also presented several letters from his family, coworkers, friends, and his church, demonstrating his family and community ties to the United States. *See* Dkt. No. 1-1 at 71–101 (letters of support). Petitioner's written bond memorandum (Dkt. No. 1-1 at 3–14) goes into more specific detail. In addressing each *Guerra* factor, he states that he is married to a lawful permanent resident, has four children in the United States, has "no gap in his work history[,]" and presents supporting documents "confirming that his spouse and family will provide housing, financial, and logistical support and will assist [Petitioner] in appearing at all future hearings." *Id.* at 10.

Without addressing any written or oral contention raised by Petitioner or referencing the *Guerra* factors, the IJ denied bond for two reasons. First, that she had concerns "about the strength of his application[.]" Dkt. No. 6-7 at 10:30–10:35. Second, she had concerns with his prior conviction, and "using the documents in the recent conviction that apparently went on for a number of years." Bond Hearing Audio at 10:45–10:58. Without elaboration, the IJ found Petitioner to be a flight risk, and denied bond. Dkt. No. 6-7 at 11:10–11:20.

This oral reasoning completely disregards *any* evidence submitted by Petitioner, or any reference to the *Guerra* factors. The IJ makes no reference to the fact that Petitioner lived at the same address for three decades, has a lawful permanent resident wife, four U.S. citizen children

and one grandchild, and no violent criminal record. Dkt. No. 6-7 at 2:30–4:10. To completely omit any evidence submitted by Petitioner is an abuse of discretion. *See Franco-Rosendo v. Gonzales*, 454 F.3d 965, 966 (9th Cir. 2006) (IJ judge "abuses its discretion when it fails to consider and address in its entirety the evidence submitted by a petitioner") (citation modified).

Additionally, the IJ's two stated reasons for denying bond cannot support a flight risk determination as a matter of law. First, the IJ referred to "concerns" about Petitioner's application, which the Court assumes is a reference to one or more applications for relief made by Petitioner in his removal case. Bond Hearing Audio at 10:30–10:35. But the supposed weakness of a noncitizen's immigration case "cannot by itself justify a finding of flight risk without explaining how this conclusion outweighs the other circumstances of their case." *De La Torre Ferretiz v. Hernandez*, No. C26-2235, 2026 WL 2123037, at *5 (W.D. Wash. July 23, 2026). This inadequacy is exacerbated by the IJ's failure to explain either why Petitioner's immigration case is weak, or the logical throughline from his immigration case's weakness to his anticipated failure to appear at future proceedings.

The IJ also expressed "concerns" about Petitioner's criminal conviction, including that the improper use of paperwork continued for "a number of years." Bond Hearing Audio at 10:45–10:58. But how any "concerns" about Petitioner's conviction relate to his risk of fleeing future removal proceedings is left unexplained. While the fact of Petitioner's criminal history is indeed serious, it is notable that the IJ did *not* find Petitioner poses a danger to society. As for flight risk, there is simply no evidence that the specific offense here—using another person's paperwork with their consent to obtain a business license—has any connection to Petitioner's likelihood of appearing for future removal proceedings as ordered. It is, after all, an "incontrovertible fact" that undocumented noncitizens obtain work in the United States. *Maderia v. Affordable Housing Foundation, Inc.*, 315 F. Supp. 2d 504, 507 (S.D.N.Y. 2004). And courts

in this District have held that noncitizens using inaccurate or fraudulent paperwork to obtain otherwise legitimate employment cannot automatically render them a flight risk. *See Soriano*, F. Supp. 3d at 1080–81 (finding abuse of discretion in IJ's "illogical conclusion" that Petitioner's use of fake Social Security numbers to maintain employment indicates flight risk). The additional "concern" that the use of the paperwork persisted for "a number of years" bears no rational relationship to flight risk, either. The IJ does not explain (nor can this Court fathom) why several years of employment based on an improperly obtained license somehow increases flight risk, whereas only a few months of employment on the same basis might not.

In theorizing that Petitioner's immigration case's weakness or his nonviolent conviction could present a risk of flight, the IJ overlooks concrete evidence demonstrating the contrary. According to the record before the Court, Petitioner's Nebraska criminal case proceeded without requiring any bench warrants to be issued. *See* Dkt. No. 1-1 at 23–29 (Nebraska criminal case filings). At the bond hearing, Petitioner's counsel stated that Petitioner even "turned himself in" and submitted to 90 days of electronic home monitoring, a sentence he seemingly completed successfully. Bond Hearing Audio at 4:12–4:22. To the extent that Petitioner's criminal conviction could hypothetically support a flight risk finding, it is wholly outweighed by Petitioner's actual behavior in his criminal proceedings and subsequent compliance with his electronic home monitoring.

In short, the IJ denied bond based on the unsupported and irrational finding that Petitioner posed a flight risk because of unexplained weaknesses in his case. At the same time, she ignored Petitioner's arguments that he is eligible for bond under *Guerra*, including three decades of residence in the United States, his equally as long marriage to a lawful permanent resident, a record of steady employment, and a lack of any violent criminal record or a history of missing court proceedings. Courts in this District have found similar inadequacies to indicate an

abuse of discretion. *See, e.g.*, *Cardoza-Garcia v. Hernandez*, No. C26-2573, 2026 WL 2294541, at *4 (W.D. Wash. Aug. 10, 2026) (finding that IJ abused discretion and violated due process where IJ's decision did not mention *Guerra* factors or "meaningfully engage with Petitioner's evidence"); *Avila Garcia v. Scott*, No. C26-2307, Dkt. No. 9 at 8–9 (W.D. Wash. July 23, 2026) (ordering release when "the IJ failed to provide any rationale for his alternative finding of flight risk and failed to engage whatsoever with the factors weighing for or against such a finding"); *Carmona Perez v. Hernandez*, No. C26-1368, Dkt. No. 17 at 9–10 (W.D. Wash. June 15, 2026) (same).

Respondents do not explain why the result here should be any different (and indeed, Respondents do not contend that the IJ did not abuse her discretion in denying bond). *See generally* Dkt. No. 5. Respondents' failure to mount a meaningful opposition to the substantive basis of Petitioner's challenge is a waiver of their opportunity to defend the IJ's bond determination as legally sound. *See, e.g.*, *Leonov v. U.S. Dep't of Homeland Sec.*, No. C26-731, 2026 WL 700545, at *4 ("Respondents' failure to meaningfully respond to Petitioner's Application effectively serves as a non-opposition."). The Court will not make Respondents' substantive argument for them and, indeed, is "require[d] to do the opposite." *Ponzon Deroy v. Warden*, No. C26-5972, 2026 WL 3132157, at *2 (C.D. Cal. Oct. 19, 2026). However, Petitioner's unrebutted arguments are convincing for the reasons already stated, and he has provided the Court with sufficient evidence to rule without argument from Respondents. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) (noting that, while "[t]he failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment" on those issues, unanswered claims may be resolved "without need of any response from the respondent[s]").

For all these reasons, the Court finds that the IJ abused her discretion in denying

Petitioner release on bond, thereby denying Petitioner due process and violating Petitioner's Fifth Amendment rights.

**C. Appropriate Remedy**

District courts have "a fair amount of flexibility" in fashioning specific habeas relief. *Soriano*, 830 F. Supp. 3d at 1081. In line with other courts in this District, and given the Court finds Petitioner's bond hearing was legally and constitutionally inadequate, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Id.*; *see also Tavurov*, 2026 WL 1283513, at *10 (finding IJ abused discretion in denying bond and ordering immediate release); *Loya Medina*, 2026 WL 1260848, at *8–9 (same); *Vasquez Lopez v. Hernandez,* 830 F. Supp. 3d 1097, 1103 (W.D. Wash. 2026) (same). Accordingly, the Court orders Petitioner's immediate release.

## V. CONCLUSION

Accordingly, the Court ORDERS :

(1) Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED.

(2) Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from detention **within twenty-four (24) hours** of this Order under appropriate conditions of release.

(3) Respondents SHALL submit to the Court, **within** seven (7) days of Petitioner's release from detention, a declaration or status report confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(4) Petitioner's Motion for Leave to File a Late Reply (Dkt. No. 11) is DENIED AS MOOT.

Dated this 24th day of November, 2026.

Tana Lin
United States District Judge